JOHN DARRINGTON, LORENZO JAMES, AND ROBERT D. JAMES, PLAINTIFFS IN ERROR, *v.* THE BRANCH OF THE BANK OF THE STATE OF ALABAMA. JOHN DARRINGTON AND LORENZO JAMES, *v.* SAME.

The bills of a banking corporation, which has corporate property, are not bills of credit within the meaning of the Constitution, although the State which created the bank is the only stockholder, and pledges its faith for the ultimate redemption of the bills.

THESE cases were brought up from the Supreme Court of Alabama, by a writ of error issued under the 25th section of the Judiciary Act. The facts and pleadings are stated in the opinion of the court.

It was argued by *Mr. Campbell* for the plaintiffs in error, and and *Mr. Hopkins* for the defendants.

*Mr. Campbell* contended that the transactions as described by the pleas, fell within the prohibitory clause of the Constitution of the United States, " that no State shall issue a bill of credit," and cited 4 Peters, 410 ; 11 Peters, 313 ; 7 Alab. Rep. 18.

*Mr. Hopkins* for the defendants in error.
In the case of Briscoe *v.* The Bank of the Commonwealth of Kentucky, 11 Peters, 257, this court decided that the notes issued by such a bank as the one which is the defendant in error, were not bills of credit within the prohibition of the Constitution of the United States. In the case of Owen *v.* The Branch Bank

at Mobile, which is the defendant in error, the Supreme Court of Alabama decided that the notes issued by this bank were not bills of credit. 3 Ala. Rep. 258.

The charter of this bank is a public statute of the State of Alabama. 6 Ala. Rep. 289, 294. This court takes notice judicially of such statutes, as it does of the acts of Congress. 9 Peters, 607, 625, 626.

This bank had a large capital, and it is not denied in the pleas, as it was in the case of the Kentucky bank, that the capital was paid. Its notes were received in payment of taxes and debts due to the State of Alabama. As a corporation the bank incurred responsibility, and gave credit to its paper. It was liable for the notes and bills it issued, and its capital was bound, like that of stock banks, for the payment of its notes in gold and silver. All its property, including its capital, was a fund for the payment of the debts of the bank. The notes of the bank were circulated upon its own credit, and every holder of the notes had the power to enforce payment, as the bank could be sued. The notes were not issued by the State, but by the bank in its corporate name, and the bank was not controlled by the State, but by a president and directors appointed by the legislature. For the capital and powers of the bank, see 3 Ala. Rep. 267. According to a previous judgment of this court, the issuance and circulation of its notes as money by such a bank is no violation of the Constitution of the United States. 11 Pet. 311, 315, 318, 320, 321, 322.

Mr. Justice McLEAN delivered the opinion of the court.

This is a writ of error to the Supreme Court of Alabama, under the 25th section of the act of 1789.

An action was brought in the Circuit Court of Mobile county against the plaintiffs in error, by the commissioners and trustees of the banks of Alabama, under an act of the State, by serving a notice on them in behalf of the Branch of the Bank of the State of Alabama, at Mobile, as the makers of a promissory note expressly made payable and negotiable at the said branch bank, dated 2d of December, 1843, and in which they promised, twelve months after date, to pay the said branch Bank by the name and description of Henry B. Halcomb, cashier, or bearer, the sum of four thousand dollars, with interest thereon from date, for value received, which said promissory note is regularly due and unpaid, and is the property of the bank.

The defendants below first pleaded *nil debet*, on which issue was joined.

In their second plea, they aver, that the consideration of the note sued for consisted of certain bills of credit issued by the

State of Alabama, under the name and style of the Branch of the Bank of the State of Alabama, at Mobile, by which the State, under that name, promised to pay the bearer of the same on demand. That these bills of credit were for such sums as showed they were intended to be circulated as money. And that the object of the State was to circulate them as money, through the agency of the bank, for a profit.

The third plea avers that the note, on which suit is brought, was made and delivered to the plaintiff as a trustee for the State, and that the bills were received of the bank by the defendants, to put them into circulation as money for the profit of the State; that the bank was controlled by the State, and that it was alone liable for the issues made by the bank in the transaction stated.

The plaintiff below demurred to the defendant's pleas except the first one, which demurrer was sustained. And on a jury being called to try the issue they found the amount of the note and interest for the plaintiff, on which judgment was entered. This judgment was taken by writ of error before the Supreme Court of Alabama, which affirmed the judgment. And this writ of error is now prosecuted in this court to reverse the judgment of affirmance.

It is argued that this case should be dismissed, as there was no special assignment of error in the Supreme Court of Alabama, as required by the law and the practice of that court.

The Supreme Court of Alabama exercised jurisdiction in the case, and affirmed the judgment of the Circuit Court. This court cannot look behind that judgment, and dismiss the cause here on the ground of a supposed violation of a rule of practice in the State court. Whether there was an assignment of error or not in that court, can be of no importance, as we look to the judgment only and its effects. But it may be proper to say there was an assignment of error in the Supreme Court of Alabama, "that the court sustained the demurrer to the pleas, and gave judgment thereon in favor of the plaintiffs, whereas, by the law of the land it should have been for the defendants."

The judgment on the demurrer in the Circuit Court was not formally entered, but the record states, "and the plaintiffs moved the court for judgment against the defendants, which was resisted by the defendants, and the plaintiff demurred to all the defendants' pleas except the first one, which demurrer was by the court sustained," &c.

The writ of error brought before the Supreme Court of Alabama the judgment of the Circuit Court as well on the demurrer as on the verdict of the jury, and the affirmance of the judgment extended to both. The pleas demurred to raised the question whether the bills of the bank were bills of credit.

Under certain restrictions, the Constitution of Alabama authorized the General Assembly to establish a State bank, with such number of branches as they should from time to time deem expedient.

In 1823 the State Bank was established on the funds of the State, then in the treasury, and a loan obtained by an issue of State bonds. The preamble to the charter states, "whereas it is deemed highly important to provide for the safe and profitable investment of such public funds as may now or hereafter be in possession of the State, and to secure to the community the benefits, as far as may be, of an extended and undepreciating currency; Be it enacted," &c.

In 1832, the bank at Mobile was established with a capital stock of two millions of dollars, procured from the sale of bonds of the State, created for that purpose.

By the charter a president and fourteen directors were to be annually elected by the legislature, who were required to make a report to each session of the legislature. The corporation was authorized to issue notes of a denomination not less than one dollar, to discount notes and deal in bills of exchange, not exceeding certain amounts. The ordinary powers of a banking corporation were conferred, with a prohibition against owing debts exceeding twice the amount of the capital; and the directors were made personally responsible for any excess of indebtment of the bank assented to by them. Until one half of the capital stock was deposited in specie, in its vaults, the corporation was not authorized to commence operations. The remedy for collecting debts was reciprocal for and against the bank. And the credit of the State was pledged for the ultimate redemption of the notes of the bank.

The State of Alabama was the only stockholder of the bank; but it was placed under the control of directors elected by the legislature, and one half of the capital, amounting to the sum of one million of dollars, was in its vault for the redemption of its bills. With the means possessed by the bank when it commenced business, is required only prudent management to sustain its credit, and effectuate the objects for which it was established.

The bills issued by the bank were made payable on presentation to it, and they were signed by its president and cashier. The bills issued being convertible into specie by the holder, were current, and in all transactions were received and paid out, as equal in value to specie.

It is impossible to say that bills thus issued come within the definition of bills of credit. The agency constituted, not only managed the bank, but were made personally liable under cer-

tain circumstances. The directors, though elected by the legislature, performed their duties under the charter, and, like all other directors of banks, derived their powers and incurred their responsibilities from the law under which they acted.

It is not perceived that their action was not as free as those of directors who are elected by individual stockholders.

The promise to pay was made by the bank, and its credit gave to its bills circulation: they were in no respect, therefore, like a bill of credit. That must issue on the credit of the State. The principles laid down by this court in the case of Briscoe *v.* The Bank of the Commonwealth of Kentucky, apply to this case. 11 Pet. 331. In that case it is said, " to constitute a bill of credit within the Constitution, it must be issued by a State, on the faith of the State, and be designed to circulate as money. It must be a paper which circulates on the credit of the State; and is so received and used in the ordinary business of life.

" The individual or committee who issue the bill must have the power to bind the State; they must act as agents, and of course do not incur any personal responsibility, nor impart, as individuals, any credit to the paper.

Did the pledge of the credit of the State in the charter of the bank, ultimately to redeem the notes of the bank, make them bills of credit?

The charter is a public law, and this court consider it as before them, the same as it was before the court of Alabama.

Upon the face of the bills there is no promise to pay, by the State, but an express promise by the bank. In this there is an important difference between the notes of the bank and bills of credit. Whatever agency has been employed to issue a bill of credit, the State promises to pay the bill, or to receive it in payment of public dues. And when a particular fund was designated out of which the bill should be paid, it depended upon the faith of the State, whether such fund should be so appropriated.

The bank had not only an ample fund for the redemption of its paper, but a summary mode was provided by which the payment of its bills could be legally enforced. And the directors were personally liable, if the issues of the bank exceeded twice the amount of its capital paid in. And besides the notes and bills of exchange taken on its discounts, enlarged the means of the bank, and increased the security of the billholders.

The charter of the bank gave to it all the means of credit with the public that banks usually have or could desire. That some reliance may have been placed on the guaranty, of the eventual payment of the notes of the bank by the State may be admitted. But this was a liability altogether different from

that of a State on a bill of credit. It was remote and contingent. And it could have been nothing more than a formal responsibility, if the bank had been properly conducted. No one received a bill of this bank with the expectation of its being paid by the State.

But it is said the State employed the bank as an agency, through which its bills should be circulated, for the profit of the State.

The State, as a stockholder, received a profit, if any profit was realized through the operations of the bank. But this is the condition of individual stockholders in all banks. And as well might it be said that the individual stockholders of a bank issue its notes, as that the State of Alabama issued the notes of the branch bank at Mobile.

A bank in either case acts under its corporate powers, and the directors derive their powers and incur their responsibilities under the law which governs them. The directors of the Mobile bank, in the discharge of their duties, it would seem, were as independent as the directors of other banks.

A bill of credit emanates from the sovereignty of the State. It rests for its currency on the faith of the State pledged by a public law. The State cannot be sued ordinarily on such bill, nor its payment exacted against its will. There is no fund or property which the holder of the bill can reach by judicial process. Such an instrument is altogether different, in form and in substance, from the notes issued by the branch bank at Mobile. The fact that the State of Alabama may be sued by one of its citizens does not alter the case. Such law may be repealed at pleasure, and if judgment could be obtained, the payment of it could not be enforced.

The State, as a stockholder, held its property as a corporation or individual could hold it, in the Mobile bank. The specie in its vaults, notes taken on discounts, and every description of property, managed by the directors of the bank, were subject to judicial process by its creditors. And in such a procedure the State, in its sovereign capacity, could not interfere. Its powers would be no greater than the powers of individual stockholders of a bank, under similar circumstances.

The affirmance of the judgment of the Circuit Court which sustained the demurrer to the pleas by the Supreme Court of Alabama was right, and its judgment is therefore affirmed.

Mr. Justice GRIER dissented.

2*

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said Supreme Court in this cause be, and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.