## MUSKEGON ETC. CO. v. KEYSTONE MFG. CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 29, 1890—Decided May 19, 1890.

(*a*) Plaintiff company agreed to make curtain rollers for defendant com-pany, and ship at its convenience. When the rollers were received parts of them were defective. Plaintiff then undertook to replace the defective parts, and with defendant's consent entered into a contract with another maker to supply them. Before these parts were shipped, defendant countermanded the order:

1. In such case, the plaintiff was entitled to a reasonable time to replace the parts; the contract between the plaintiff and the manufacturer was admissible in evidence; but a letter from the latter to the defendant was not admissible to show the want of due diligence on the part of the plaintiff in obtaining the new parts.

2. The plaintiff company being required to ship the rollers at its own convenience, only, it was not error to refuse an offer on the part of the defendant company to prove that by reason of the plaintiff's failure to supply rollers, such as were contracted for, the defendant's factory and men remained idle and unemployed.

3. Nor was it error to charge the jury that the measure of damages for the defendant's refusal to perform its contract, was the contract price for the rollers, less what it would cost the plaintiff to deliver to defend-ant the parts to supply those which were defective, with interest from an average of the contract times of payment.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 103 January Term 1890, Sup. Ct.; court below, No. 203 September Term 1888, C. P.

On August 18, 1888, the Muskegon Curtain-Roll Company brought assumpsit against the Keystone Manufacturing Com-pany. Issue.

Statement of Facts.

At the trial on October 12, 1889, the plaintiff put in evidence an order in writing to the plaintiff company, at Muskegon, Michigan, by the defendant company at Girard, Pa., dated November 22, 1887, to make and ship at the plaintiff's convenience three car loads of curtain rollers, afterwards reduced to two car loads.   On December 6, 1887, one car load of rollers reached the defendant, and on December 16th the second car load arrived.   The rollers were found to be defective in certain parts, and the plaintiff was so notified.   The plaintiff company then agreed to replace the defective parts, and, as it was about to go out of business, arranged, with the consent of the defendant, to have the parts made by one J. B. Adams, at Cheboygan, Mich., and shipped by him to the defendant.   To carry out this arrangement the plaintiff made a contract in writing with Adams, dated January 11, 1888, by which Adams was to make and ship the parts required.   This contract was offered in evidence by the plaintiff, and admitted under objection by the defendant; exception.[1]

After said contract was entered into between the plaintiff and Adams, the latter sent samples to the defendant, and upon receiving them the defendant wrote on January 17, 1888, advising Adams of some corrections and directing him to proceed with the making of the parts.   Adams wrote to defendant in reply on January 21, 1888, promising to proceed at once.   On February 3, 1888, the defendant, not having received the parts, and having purchased them elsewhere, wrote and telegraphed to both the plaintiff and to Adams rescinding the order.   The defendant, for the purpose of showing that the plaintiff had not used due diligence in obtaining the parts, offered in evidence a letter from Adams to the defendant dated February 7, 1888.   This letter was as follows, the Mr. Frost named therein being the president of the plaintiff company : " Gentlemen : I have just returned from a trip east, during which I had intended to call upon you, but I found my time limited, as I was needed at home.   I found your telegram and letter upon my arrival and have stopped getting out your order until I shal hear from Mr. Frost.   Would say when I contracted with him nothing was said about speedy activity, and I got the impression that there was no cause to hurry, and therefore got my stock out of what I sorted as being too short for regular trade

Could have gotten the order out in ten days if I had known and used regular stock. Please send me at once sample of spindles such as you use, and the quantity you will take, and I will see what price I can quote."

The offer was objected to by the plaintiff, the letter being res inter alios acta and otherwise incompetent. The objection was sustained, offer refused; exception.[2]

The defendant offered to prove that by reason of plaintiff's failure to furnish the rollers as contracted for, its factory and men were idle from about December 28, 1887, until January 26, 1888, during which time the defendant was unable to continue its business. To this offer it was objected that the plaintiff was required to furnish the rollers at its own convenience, only, and that the offer was to prove speculative damages. The offer was refused; exception.[15]

At the close of the testimony the court, GUNNISON, P. J., instructed the jury, and answered certain points presented as follows:

The plaintiff requests the court to charge the jury:

1. That, under the contract of November 22d, the plaintiff was only required to furnish rolls at its own convenience; and the fact that it shipped rolls, parts thereof not completed, did not prevent it from shipping other rolls in the place thereof, nor limit the time in which they should be sent, and plaintiff is entitled to recover.

Answer: Under the contract of November 22, 1887, the plaintiff was authorized to ship the rolls at its convenience. No particular time was fixed for its delivery. Having shipped rolls which were not accepted, they had within a reasonable time from the date of the contract to supply the portions which were defective in the original shipment. The only limit of time was that the shipment be within a reasonable time.[3]

2. That the Keystone Manufacturing Company could not legally rescind said contract on February 3, 1888, and decline to receive the rolls.

Answer: If the jury believe the testimony on the part of the plaintiff, the original contract was modified by the parties after the shipment of the two car loads was made, and, under the modification of the contract, the plaintiff had a reasonable time after the receipt by Adams of the letter of January 17,

1888, from the defendant to him, in which to supply perfect rolls; and the defendant could not rescind the contract and escape liability to pay for the goods ordered, by notice to Adams that they would not receive the parts to be made by him, before a reasonable time had elapsed after the receipt by Adams of the letter of January 17, 1888, in which to allow him to make and ship them. Whether the time between the receipt of the letter and February 3, 1888, the date of the telegram to Adams, was a reasonable time, is a question for the jury to determine upon the evidence.[4]

3. If the court refuse the above point, he is requested to charge: If the jury find from the evidence that, after the dis covery of the defective rolls, the plaintiff and defendant met and plaintiff agreed to supply the defective pieces, and in pur suance of such agreement made a contract with J. B. Adams to supply the same, and the Keystone Manufacturing Company, on January 17, 1888, directed the said Adams to proceed and complete the order, the said plaintiff would have a reasonable length of time after that date within which to fill the order, and if such reasonable time had not elapsed on February 3, 1888, the defendant was not justified in canceling the order and sending notice that it would not receive the goods, and plaintiff is entitled to recover.

Answer: This point is affirmed.[5]

5. The Muskegon Curtain-Roll Company having shown that it could produce the long pieces of the rolls, bored, for eight dollars per thousand, that price per thousand must govern the jury in arriving at the amount to be deducted from plaintiff's bill for not furnishing the said long pieces, with freight to Miles Grove added.

Answer: If the jury find the facts as testified to by the witnesses for the plaintiff, and that the plaintiff did not delay an unreasonable time after January 17, 1888, in furnishing the long pieces, the defendant is liable for the contract price of the rolls, less the price at which he was able to furnish the long pieces to the defendant at Miles Grove, the business place of the defendant.[6]

6. That the plaintiff is entitled to recover the contract price of the goods, $2,420.73, less costs to plaintiff of long pieces as above, with interest on balance from February 3, 1888.

### Statement of Facts.

Answer: If the jury find for the plaintiff, upon the facts submitted to them under the preceding answer, they should find for the amount of the contract price, $2,420.73, less cost to plaintiff to deliver at Miles Grove the long pieces, with interest from an average time after the notes to be given under the contract at which interest was charged. From this sum should be deducted the price of any damages for defective rolls purchased by the defendant from Ames & Frost in the spring of 1887, provided the jury find from the evidence that the plaintiff assumed the liability of Ames & Frost.[7]

The defendant has presented the following points:

1. That if the jury find, from the evidence, that the Muskegon Curtain-Roll Company sent two car loads of skeleton curtain rolls to defendant in December, 1887, and that they were defective on account of being bored too deep, 15 inches instead of 13 inches, on account of which they were rendered unfit for the defendant's use, and that the defendant refused to accept said two car loads and never used any part of the same, then the plaintiff is not entitled to recover anything on account of said two car loads.

Answer:—This would be so, unless the jury find that there was a subsequent arrangement between the parties, agreed to by the defendant, by which the plaintiff was to supply the defective pieces with perfect pieces, as testified to by the witnesses for the plaintiff.[8]

2. That the contract made between the parties to this suit on November 22, 1887, being an entire contract, if the jury find, from the evidence, that one part of each of the rolls furnished in pursuance thereof was materially defective and unfit for use, and that none of said two car loads were used by the defendant, then there can be no recovery on account of said two car loads shipped in December, 1887.

Answer: This point is affirmed, subject to the conditions mentioned in the answer to the first point.[9]

3. The contract being an entirety, the plaintiff must have performed its part of the contract fully in furnishing the proper rolls, etc., and there can be no recovery for a part performance.

Answer: This point is answered by the answer to the second point.[10]

Syllabus.

4. That there is no evidence in this case which will enable the plaintiff to recover anything on account of the two car loads of defective material shipped in December, 1887.

Answer: This point is refused.[11]

The jury returned a verdict in favor of the plaintiff for $1,500. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal assigning for error:

1. The admission of plaintiff's offer.[1]
2, 15. The refusal of defendant's offers.[2] [15]
3-7. The answers to plaintiff's points.[3 to 7]
8-11. The answers to defendant's points.[8 to 11]

*Mr. W. Benson* (with him *Mr. E. A. Walling*), for the appellant.

*Mr. T. A. Lamb*, for the appellee.

PER CURIAM:

A careful examination of the numerous assignments has failed to satisfy us that the learned judge below committed any serious error, either in his rulings upon questions of evidence, or upon the law as applicable to the case. It was essentially a question for the jury, and it was submitted to them under adequate instructions.

Judgment affirmed.