GARDNER *v.* DEEDS & HIRSIG.

(*Nashville.* December Term, 1905.)

**CONTRACT.** Action for breach of, maintainable, without manufacture of goods sold by vendor, when vendee refuses to accept performance. Measure of damages—profits. Case in judgment.

Bill filed to recover damages for breach of written contract whereby defendants purchased from complainant, a manufacturer, five hundred buggies, of specified descriptions and at stipulated prices, which were not *in esse* but were to be manufactured by complainant and ordered as needed by defendants. Complainant procured all the materials and constituent parts necessary for the construction of the buggies, .but they were not manufactured for the reason that defendants refused to order them, and finally declined to accept performance.

*Held:* 1. Defendants having breached the contract, complainant was not required to manufacture the buggies in order to maintain an action for damages.

Cases cited and approved: Ault v. Dustin, 100 Tenn., 366; Hinckley v. Pittsburg Steel Co., 121 U. S., 264.

2. The measure of damages for the breach of the contract was the profit complainant would have made if he had been permitted to complete the contract; that is, the contract price of the goods less the cost of manufacture.

Cases cited and approved: Smith v. O'Donnell, 8 Lea, 468; Singleton v. Wilson, 85 Tenn., 344; Chisholm & Moore Mfg. Co. v. U. S. Canopy Co., 111 Tenn., 211; Hinckley v. Pittsburg Steel Co., 121 U. S., 264; P. W. & B. R. R. Co. v. Howard, 13 How. (U. S.), 307; U. S. v. Behan, 110 U. S., 344; Hale v. Trout, 35 Cal., 229; Kimball Bros. v. Deere, Wells & Co., 108 Iowa, 376; Cameron v. White (Wis.), 43 N. W., 155, 5 L. R.

Gardner v. Deeds & Hirsig.

A., 493; Black River Lumber Co. v. Warner, 93 Mo., 374; Tufts v. Weinfeld, 88 Wis., 647; Muskegon, etc., Co. v. Keystone Mfg. Co., 135 Pa., 132; Kingman & Co. v. Western Mfg. Co., 92 Fed., 489; Kingman & Co. v. Hanna Wagon Co., 176 Ill., 553.

Case cited and distinguished:   Hardwick v. Can Co., 113 Tenn., 657.

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

H. H. BARR, for Gardner.

P. M. ESTES, for Deeds & Hirsig.

---

MR. JUSTICE McALISTER delivered the opinion of the Court.

This cause was decided at a former day of the term, in which the decree of the court of chancery appeals in favor of the complainants was affirmed.   It is again before the court on a petition to rehear.

The object of the bill was to recover damages for the breach of a written contract whereby the defendants, Deeds & Hirsig, purchased from the complainant, Russell- E. Gardner, five hundred buggies of specified de-

116 Tenn.—9

scriptions and stipulated prices. The contract contemplated that the buggies were to be ordered as needed by the purchaser. The vendor was a manufacturer doing business in the city of St. Louis, and had purchased all the necessary material and constituent parts necessary for the construction of the vehicles; but these component parts were not assembled and the buggies manufactured for the reason that the purchasers, Deeds & Hirsig, refused to order them and finally declined to accept performance. The court of chancery appeals expressly found that the vendor, Gardner, was without fault, and that the contract had been breached by Deeds & Hirsig without legal justification.

The crucial question presented to this court on the facts found by the court of chancery appeals was in respect of the measure of damages the vendor was entitled to recover. The contention made on behalf of Deeds & Hirsig in this court was that the measure of damages is the difference between the contract price and the market price of the buggies agreed to be purchased at the time and place of delivery, and that, since the court of chancery appeals had found that the price of buggies and buggy materials during the year 1903, when this contract was to be performed, had materially advanced in price, therefore the vendor had lost nothing and was entitled to no recovery for the breach of the contract, except perhaps nominal damages.

The court of chancery appeals, while finding that the price of buggies and buggy materials had advanced, yet

the vendor had purchased his material and was ready to perform his contract, and could have furnished the buggies, and was therefore entitled to recover the profits he would have made, had the contract not been breached by the defendants, Deeds & Hirsig.

The court of chancery appeals also finds that in the year 1902 complainant buggy company sold some 30,000 vehicles, the output of its concern; that it practically only manufactured upon orders; that it had all the stock bought, most of it being in somewhat a finished condition, though not entirely finished, and most of it unpainted; and that the concern could have manufactured and delivered the buggies or vehicles for which the defendants had contracted in addition to the others sold.

That court, however, found there was no market upon which these buggies could have been sold at a profit, or for as much as the defendants had contracted to pay for them, and that if their constituent parts had been assembled and manufactured into buggies, and the lot exposed for sale on the market, it would have resulted in a sacrifice and a loss to the defendants greater than would have been suffered if the buggies had not been manufactured and exposed to sale.

The first complaint made in the petition to rehear is that this court stated in its original opinion that "the court of chancery appeals found there was no market upon which these goods could have been sold at a profit or for as much as the defendants had contracted to pay for them." "Defendant respectfully insists that this

court has confused the argument of the court of chancery appeals with its finding of fact." We have again reviewed the report of the court of chancery appeals, and find that we committed no error in our interpretation of their findings on this subject. In order that there may be no mistake, we quote the exact language of that court on this subject as follows: "It is shown that there was no established market for buggies in the sense that would have enabled the complainant in the case to have placed the buggies which the defendants had contracted for upon the market and sold them at the advanced price, or even at as much as defendants had contracted and agreed to pay."

And again: "Or that there was any place where he could have sold them at all."

And again: "The proof does not show that there was any place either in Nashville where these buggies were to be delivered, or at St. Louis where they were to be manufactured, or elsewhere, where the complainant, or any one, if he had manufactured them, could have placed them upon the market and sold them at a fixed price."

And again: "We are entirely satisfied that, if the complainant could have sold these vehicles at a profit, he would have done so."

Again: "We are satisfied that, if the defendants could have taken and sold them at a profit to themselves during this time, they would have done so."

Again, in another place, the court said: "But the proof does not show, and we infer from all these things

that there was no place or market where the complainant, if he had manufactured these goods, could have placed them and forced a sale at a profit."

We think that these extracts from the opinion of the court of chancery appeals fully demonstrate that this court was not in error in its former statement of the findings of the court of chancery appeals on this subject. However, the real ground upon which we bottomed our decree was that where goods are to be manufactured upon order, and there is no specific determinate chattel *in esse,* and the purchaser has refused to accept performance of the contract by the manufacturer, the measure of damages is the profit which the manufacturer would have made if he had been permitted to comply with his contract. This is the rule everywhere recognized for the admeasurement of damages in such cases.

This question arose in *Hinckley* v. *Pittsburg Steel Co.,* 121 U. S., 264, 7 Sup. Ct., 875, 30 L. Ed., 967. Hinckley agreed in writing to purchase from the steel company rails to be rolled by the latter, and to be drilled as may be directed, and to pay for them $58 per ton. He refused to give directions for drilling, and at his request the steel company delayed rolling any of the rails until after the time prescribed for their delivery, and then the defendant advised the plaintiff that he should decline to take any rails under the contract. *Held*: (1) Hinckley was liable in damages for the breach of the contract. (2) The steel company was not bound to roll the rails and tender them to the defendant. (3) The proper rule

of damages was the difference between the cost per ton
of making and delivering the rails and the contract price
of $58 per ton.

In the midst of its opinion, the court said as follows:
"Hinckley contends that the steel company should have
manufactured the rails and tendered them to Hinckley,
and upon his refusal to accept and pay for them should
have sold them in the market at Chicago, and held the
defendant responsible for the difference between what
they would have brought on such sale and the market
price. But we think no such rule is applicable to this
case. This was a contract for the manufacture of an
article, and not for the sale of an existing article. By
reason of the facts found as to the conduct and action
of Hinckley, the steel company was excused from ac-
tually manufacturing the rails, and the rule of damages
applicable to the case of the refusal of a purchaser to
take an existing article is not applicable to a case like
the present. The proposition that after the defendant
had, for his own purposes, induced the plaintiff to delay
the execution of the contract until after the 31st of
August, 1882, and had thereafter refused to take any
rails under the contract, the plaintiff could still have
gone on and made the 6,000 tons of rails and sold them
in the market for the defendant's account, in order to
determine the amount of its recovery against the de-
fendant, can find no countenance from a court of jus-
tice."

The court of chancery appeals finds in the present case

Gardner v. Deeds & Hirsig.

that it was a part of the contract between these parties that Deeds & Hirsig should order the buggies of the sizes and patterns needed, but that, notwithstanding the buggy company had frequently been urged to send forward their orders, they had persistently refused to do so. Under these circumstances, the buggy company was not required or expected to assemble the constituent parts of the vehicle and manufacture them into buggies.

In *Ault* v. *Dustin,* 100 Tenn., 366, 45 S. W., 981, it was held by this court that the purchaser of a quantity of rope, which was to be manufactured and delivered upon his orders in assorted sizes by a specified date, breached his contract by failure to give orders a sufficient time before the date fixed for final delivery to reasonably enable the seller to manufacture and deliver the goods. It was further said in that case that the law will imply as a term of this contract that the specifications should be furnished within a reasonable time, in order to enable the defendant to comply with his contract by the time limited; citing 1 Beach on Contracts, sec. 133. It was clearly the duty of Deeds & Hirsig to have advised the manufacturer of the kind and number of vehicles desired from time to time during the continuance of the contract, and there was no obligation resting on the buggy company to manufacture the vehicles until they were so ordered.

In *Hinckley* v. *Steel Co.,* supra, the court held that under the circumstances Hinckley was estopped from insisting that the plaintiff should have undertaken the

risk and expense of actually making and selling the rails. These considerations also show that the rule of damages adopted by the circuit court was the proper one. It was in accordance with the rule laid down by this court in *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Howard,* 13 How., 307, 14 L. Ed., 157. In that case, a contractor for the building of a railroad sued the company for its breach. On the question of damages, this court said (page 344 or 13 How., 14 L. Ed., 157): "It must be admitted that actual damages were all that lawfully could be given in an action of covenant, even if the company had been guilty of fraud. But it by no means follows that profits are not to be allowed, understanding, as we must, the term 'profits' in this instruction as meaning the gain which the plaintiff would have made if he had been permitted to complete his contract. Actual damages clearly include the direct and actual loss which the plaintiff sustains *propter rem ipsam non habitam.* In the case of a contract like this, that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference is the inducement and real consideration which causes the contractor to enter into the contract. For this he expends his time, exercises his skill, uses his capital, and assumes the risks which attend the enterprise. And to deprive him of it, when the party had broken the contract and unlawfully put an end to the work, would be unjust. Wherever profits are spoken of as not a subject of damages, it will be found that something contingent

upon future bargains or speculations or states of the market are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value or cost. See *Masterton* v. *Mayor of Brooklyn,* 7 Hill (N. Y.), 61, 42 Am. Dec., 38, and cases there referred to. We hold it to be a clear rule that the gain or profit of which the contractor was deprived by the refusal of the company to allow him to proceed with and complete the work was the proper subject of damages."

In *U. S.* v. *Behan,* 110 U. S., 344, 4 Sup. Ct., 81, 28 L. Ed., 168, the rule was thus stated: "The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, viz.: First, what he had already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson in the case of *Masterton* v. *Mayor of Brooklyn,* 7 Hill, 69, 42 Am. Dec., 38, they are 'the direct and immediate fruits of the contract,' they are free from this objection. They are then part and parcel of the contract it is entering into, and

constitute a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stiplation."

In *Hale* v. *Trout*, 35 Cal., 229, the facts were: That A. and B. entered in to a contract by which A. was to manufacture for B. a given amount of lumber by specified term, for which B. was to pay a fixed price per thousand, payable at the end of each month, and B., without fault on A.'s part, refused to pay for lumber sawed and received, and to receive any more lumber, declaring the contract at an end. *Held,* that the rule of damages for the breach is the difference between the cost of making the lumber and the contract price. In other words, that the plaintiff was entitled to recover the profits that he would have made had he been permittted to complete the contract. See, also, *Kimball Bros.* v. *Deere, Wells & Co.,* 108 Iowa, 676, 77 N. W., 1041.

In *Cameron* v. *White* (Wis.), 43 N. W., 155, 5 L. R. A., 493, it was held: "The measure of damages in an action for refusing to perform a contract to purchase lumber to be gotten out and delivered by plaintiff, notice of which refusal is given after the logs have been purchased, but before any of them have been sawed, is the profit which the plaintiff could have made on the contract had he been permitted to perform the same." See, also, *Black River Lumber Co.* v. *Warner,* 93 Mo., 374, 6 S. W., 210; *Tufts* v. *Weinfeld,* 88 Wis., 647, 60 N. W.,

992; *Muskegon, etc., Co.* v. *Keystone Mfg. Co.,* 135 Pa., 132, 19 Atl., 1008; *Kingman & Co.* v. *Western Mfg. Co.,* 92 Fed., 489, 34 C. C. A., 489; *Kingman & Co.* v. *Hanna Wagon Co.,* 176 Ill., 553, 52 N. E., 328.

In Page on Contracts, vol. 3, section 1591, the rule is announced that, "if such a contract is broken by the vendee, the measure of damages is the contract price, less the cost of manufacture;" that is to say, he could recover the profit that he would have made had there been no breach. 13 Cyc., p. 159, citing numerous cases.

In *Ault* v. *Dustin,* supra, it was said: "It is insisted on behalf of defendants that this was not a sale of goods *in esse,* but a contract to manufacture goods; that, after a person ordering goods has given the manufacturer notice not to proceed with his work, the party so notified has no right to proceed with the manufacture." This court recognized this contention as sound, and quoted from 2 Beach on Contracts, sec. 766, as follows: "The principle is universal that, while a contract is executory, the party has the power to stop performance on the other side by an explicit direction to that effect, subjecting himself to such damages as will be compensation to the other party for being stopped in the performance of his work. The party thus forbidden cannot afterwards go on, and thereby increase the damages, and then recover such damages. . . . The legal right of a party, on general principles, to violate, abandon, or renounce his contract, on the usual terms of compensa-

tion to the other party for damages which the law allows, is universally recognized."

Now, it is very true that, when Deeds & Hirsig notified the buggy company that they would not accept the vehicles, the manufacturer was not warranted in manufacturing the vehicles, and thereby increasing the damages. But, under all the authorities, he was clearly entitled to compensation for the breach, and, under the rule announced, his compensation is to be measured by the profits he would have made if he had been permitted to complete his contract.

The case of *Smith* v. *O'Donnell,* 8 Lea, 468, clearly announced the rule that in such cases the measure of compensation is the profit that would have been derived from the execution of the contract. *Singleton* v. *Wilson,* 85 Tenn., 344, 2 S. W., 801. See, also, *Chisolm & Moore Mfg. Co.* v. *U. S. Canopy Co.,* 111 Tenn. (3 Cates), 211, 77 S. W., 1062. The case of *Hardwick* v. *Can Co.,* 113 Tenn., 657, 88 S. W., 797, relied on by the complainants for the rule that the measure of damages in such cases is the difference between the contract price of the chattel and its market value, is not in point, for the reason it appeared that in that case the stoves had all been manufactured and were *in esse.*

Let the petition to rehear be dismissed.