## WRATHALL v. MILLER.

### No. 3105. Decided December 11, 1917. (169 Pac. 946.)

1. APPEAL AND ERROR—SCOPE—CONCLUSIVENESS OF VERDICT. A verdict, rendered upon substantial evidence, is conclusive. (Page 219.)

2. COURTS—CITY COURTS—JURISDICTION—CONSTRUCTION OF STATUTES. Comp. Laws 1907, section 686x10, subd. 2, declaring jurisdiction of city courts, and section 688, subd. 2, declaring jurisdiction of justices of the peace, being word for word the same, authorities relating to jurisdiction of justices of the peace are in point on the jurisdiction of the city courts.[1] (Page 220.)

3. COURTS—CITY COURTS—JURISDICTION—FALSE IMPRISONMENT. Comp. Laws 1907, section 686x11, stating limitations on jurisdiction of city courts, having failed expressly to deprive such courts of jurisdiction of civil actions for false imprisonment, is persuasive of the fact that such courts have jurisdiction of such actions. (Page 221.)

4. BOUNDARIES—"BANK" OF STREAM—CONSTRUCTION. A city boundary calling for the bank of a stream does not extend merely to the high-water mark on the bank of the stream, but goes to the mean water level, regardless of droughts or freshets. (Page 222.)

5. APPEAL AND ERROR—HARMLESS ERROR. In an action for false imprisonment by arrest by landowner for trespass in alleged violation of city ordinance, instruction that city boundary calling for bank of stream extended to high-water mark was prejudicial in the absence of evidence as to where such mark is with reference to the point where the alleged trespass occurred. (Page 222.)

Appeal from District Court of Salt Lake County, Third District; *Hon. F. C. Loofbourow*, Judge.

Action by Fred A. Wrathall against L. C. Miller and others.

Judgment for plaintiff against Miller. Miller appeals.

REVERSED and remanded, with directions.

*D. W. Moffat* for appellant.

*Hancock & Barnes* for respondent.

THURMAN, J.

---

[1] *Nichols v. O. S. L. R. Co.*, 28 Utah 319, 78 Pac. 866.

This is an action for false imprisonment which was commenced and tried in the city court of Salt Lake City, and judgment rendered for the defendants. The case was appealed to the district court of Salt Lake County, and there tried to a jury. Verdict was rendered for plaintiff against defendant Miller, and judgment entered. Miller appeals to this court.

The material facts are as follows: Murray is an incorporated city in Salt Lake County. The southeast bank of Big Cottonwood creek constitutes a considerable portion of the municipal boundary of the city. The defendant Miller owns land covering a portion of this part of the boundary line. At the time of the alleged wrongs described in the complaint plaintiff was fishing in the creek, wading up stream. Plaintiff testifies that Miller was standing in the bed of the stream or on a "gravel strip which came out to him"; that Miller accosted plaintiff and some conversation followed. Miller testifies in substance that he was standing on his land near the creek on the Murray side, and when he first saw plaintiff, plaintiff was coming up out of the stream onto defendant's land; that at that point grass and verdure were growing; that water never covered that point, except, perhaps, when there was a flood; that plaintiff came up to where defendant was before any conversation occurred between them. The testimony as to what was said and done, and the location and position of the parties, is in sharp conflict, the plaintiff insisting that Miller then and there arrested him and Miller denying it. In any event, plaintiff accompanied defendant in his automobile to a point in Murray City, where he was taken into custody by the city officers and later charged with committing a trespass. Miller was not an officer and had no authority to make an arrest for a public offense, unless the same was committed in his presence. Comp. Laws 1907, section 4638. An ordinance of Murray City, in force at the time of this occurrence, makes it an offense for any person to drive, ride, or walk across the premises of another without the permission of the owner or occupant. It is not claimed that plaintiff had permission of defendant to go upon his land. The validity of the ordinance is not challenged, and as to its valid-

ity we express no opinion. Whether or not what was done and said by defendant Miller at the time of the conversation referred to constituted an arrest of the plaintiff becomes immaterial in view of the fact that that question was fairly submitted by the court to the jury. There being substantial evidence to support its findings, the verdict thereon is conclusive.

The vital questions raised by this appeal are: (1) The jurisdiction of the city court in which the case was commenced, it being contended by appellant that the court had no jurisdiction over the subject-matter of the action, and consequently neither the district court nor the Supreme Court could acquire jurisdiction by appeal. (2) An alleged erroneous instruction given by the court to the jury relating to the boundary line of Murray City, appellant contending that there is no evidence in the case upon which the same could be predicated, and that the instruction was erroneous in other respects.

It is conceded once for all that if the city court was without jurisdiction over the subject-matter, neither the district court nor this court could acquire jurisdiction in this proceeding. This is elementary doctrine and needs no citation of authorities. Whether or not the city court of Salt Lake        2 City had jurisdiction of the subject-matter of this action depends entirely upon the meaning and intention of the statute conferring jurisdiction on such courts. Comp. Laws 1907, section 686x10, subd. 2, provides that city courts shall have jurisdiction "in actions for damages for injury to the person, or for taking or detaining personal property, or for injury to personal property, or for an injury to real property where no issue is raised by the answer involving the plaintiff's title to or possession of the same, if the damages claimed be less than $500." Comp. Laws 1907, section 688, subd. 2, relating to the jurisdiction of justices of the peace, is word for word the same as the language above quoted, so that in construing the meaning of the language of the section quoted authorities relating to the jurisdiction of justices of the peace, where the same or similar language is used, are in point. This proposition is recognized and determined by this court in *Nichols* v.

*O. S. L. R. Co.*, 28 Utah, 319, 78 Pac. 866. It is further con-
tended by appellant that the jurisdiction of justices of the
peace is of statutory origin, and that such statutes will not
be extended by implication, citing 24 Cyc. 440, and that such
statutes will be strictly construed. Id. 445. This also is ele-
mentary and is conceded.

Coming down to the concrete question, appellant in-
sists that the city court has no jurisdiction of actions for          3
false imprisonment, citing page 449 of the same volume,
in which the text is as follows:

"As a general rule the jurisdiction of justices does not extend to
torts affecting the person, and they have no jurisdiction over actions
for assault, causing death, malicious prosecution, false imprisonment,
or libel and slander."

The cases cited in the note are far from satisfactory as far
as sustaining appellant's contention is concerned. Some of
them we have been unable to find in the books referred to.
Some of them are governed by statutes expressly excepting
cases of the class to which this belongs from the jurisdiction of
justices of the peace. *Rice* v. *Day*, 34 Neb. 100, 51 N. W. 464,
cited by appellant, was an action for malicious prosecution.
The statute of that state (Comp. St. 1881 [Code Civ. Proc.]
section 907) expressly provides that justices of the peace shall
not have cognizance of actions for malicious prosecution, etc.
The cases, generally, cited by appellant are clearly distin-
guished from the present case. *McKenzie* v. *Doran et al.*, 39
Mont. 593, 104 Pac. 677, is relied on. That was an action for
slander before a justice of the peace. The statute conferring
jurisdiction upon justices of the peace at that time provided
that justices' courts should have civil jurisdiction in actions for
damages for injury to the person if the damages claimed did
not exceed $300. In view of that statute, and other statutes
referred to, the court held the justice of the peace had juris-
diction. We see nothing in that case upholding appellant's
contention, but rather the reverse.

Referring again to our own satute on this question of juris-
diction. After stating the class of cases in which city courts
have jurisdiction the Legislature, in the very next section

(Comp. Laws 1907, section 686x11) proceeds to state limitations upon the jurisdiction of such courts, and excludes from them questions involving title to land and the legality of a tax, impost, toll, or municipal fine, and provides the procedure in such cases. No exception is made of actions for false imprisonment, malicious prosecution, libel or slander, as is the case in the statutes of many of the states. The Legislature having failed to except this class of cases from the jurisdiction of the city courts at the time when it was making exceptions thereto, as above shown, is persuasive at least that it did not intend to make such exception at all. If it did not intend to make it, and it is manifest that it did not, should this court make it by construction?

There are two kinds of actionable injuries recognized by all of the authorities: (a) Injuries to the person; (b) injuries to property. Some authorities create another class, to wit, injuries to relative rights. False imprisonment certainly cannot be said to fall within the class of injuries to property. Neither is it an injury to relative rights. It is an interference with the person and personal liberty of the individual. It would therefore clearly seem to fall within the class of injuries to the person. Indeed, it seems so clear that it can hardly be considered a subject of judicial construction. Without citing or enumerating the many decisions holding views contrary to the contention of appellant in respect to this matter, we refer to 6 Words and Phrases, pp. 5340 to 5344, inclusive, where the subject is treated at considerable length, showing, as we believe, a great preponderance of authority in favor of sustaining the jurisdiction.

The more serious question, however, in our view of the case, is that relating to the alleged erroneous instruction to the jury. The evidence is exceedingly meager and indefinite as to the exact point where plaintiff entered upon the land of defendant in its relation to the boundary line of the city.     4, 5 Whether plaintiff was within the city of Murray when he stepped from the water upon the defendant's land and thereby violated the city ordinance prohibiting trespass, as claimed by the defendant, depends entirely upon the question

as to where the boundary line is at that point.   Concerning the boundary line the court instructed the jury as follows:

"You are instructed that it appears in evidence that the limits of Murray City are established, by an ordinance of that city, at the point where it is claimed the plaintiff committed an offense, as the south bank of Big Cottonwood creek.   This language of the ordinance means the ordinary high-water mark of the water running in said stream; that is, the line where the high water of an average year rests upon the bank of the stream, the bed of the stream being without the limits of Murray City."

Whether plaintiff was on defendant's land in defendant's presence at a point below the high-water line of the creek, which under the instruction of the court, would be outside the city, or above the high-water line which would bring him within the city, does not satisfactorily appear from the evidence. It will be remembered defendant testified he was on his land at a point where grass and verdure grew and which the water never covered, except, perhaps, when there was a flood.   It is true plaintiff testified that he was not on defendant's land at all until he was spoken to by defendant, so that on this point there is a conflict in the testimony of plaintiff and defendant.   But we are dealing now with an instruction of the court on a point vital to the contention between the parties. The court, by its instruction, undertook to define what constituted the boundary line in law.   It was therefore necessary that some evidence should have been given indicating where that line would appear on the ground and its relation to the particular spot of defendant's land in question.   If the instruction intended to fix the boundary line at the highest point reached by flood waters of the creek the testimony of defendant that the flood waters might sometimes cover the land where he stood would be sufficient to show that the land in question is outside of the city because in that case the high-water mark would be above where he stood.   But we cannot believe that the court intended by its instruction to fix the high-water mark made by the flood waters as the boundary line of the city.   If it did so intend, in our judgment the instruction was erroneous

and prejudicial to the defendant. In any event the court committed prejudicial error in the instruction given, for if it did not intend to make the flood water mark the boundary line, then it fixed the line at a point not shown on the ground by any evidence in the case. It cannot be assumed as matter of law that if the evidence had definitely established on the ground the boundary line defined by the court that the verdict would necessarily have been the same. It might and it might not, depending largely on the question as to just where the land in question was, with reference to the boundary line on the ground.

For the foregoing reasons the judgment of the trial court must be reversed, but, as the question of boundary will of necessity be involved in a new trial of the case, it becomes necessary that we should express our views upon that question.

Boundary lines fixed and established with reference to streams or bodies of water, except where the water itself is the boundary line, oftentimes present perplexing questions. Such has been the experience of judicial tribunals in nearly every state in the Union. Where the water itself is declared to be the boundary line the question is usually simple and of easy solution, for, ordinarily, in such cases the edge or margin of the stream, or middle or thread of the stream, according to the language used in describing it, becomes the boundary line as marked on the ground. But the difficulty arises in cases like the one at bar where the bank of a stream or body of water, instead of the water itself, becomes the boundary line. The question is then presented: What is the bank? Where does it commence with reference to the water? Is it the high-water mark, or low-water mark, or some point between? This question, as before suggested, has been a fruitful source of litigation, not only in this but in other countries, and it may be presumed that nearly every shade of opinion has been rendered in attempts to arrive at a solution. The question in the form here presented has never before come before this court, and while the decision of this case is of minor significance as far as the result to the parties before the court is concerned,

it, nevertheless, is of exceeding importance in its broader aspect as affecting the people of the commonwealth. Because of its importance in this respect, as well as attempting to fairly and justly determine the rights of the parties to the litigation, we have carefully examined many of the leading cases, and have arrived at a conclusion which we believe is supported by reason and by the great weight of authority. The nearest leading case in point, well considered and of the highest authority in the country, that we have examined in our investigations, is *State of Alabama* v. *State of Georgia*, 24 How. 505, 16 L. Ed. 556. That case involved the determination of a boundary line established on the west bank of the Chattahoochee river separating the states of Alabama and Georgia. The description of the boundary, as far as material here, reads:

"West of a line beginning on the west bank of the Chattahoochee river where the same crosses the boundary between the United States and Spain running up said river and along the western bank thereof."

The parallel between that description and the description of the boundary in the present case is perfect in principle. Note, "thence east on said line to the west bank of Big Cottonwood creek, thence southeasterly following said bank," etc. The only point to be decided in the *Alabama-Georgia Case* was at what point on the ground with reference to the stream was the boundary as above described. The determination of that question is found in the concluding paragraphs of the court's opinion on pape 515, which we quote in full:

"We also agree and decide that this language implies that there is ownership of soil and jurisdiction in Georgia in the bed of the river Chattahoochee, and that the bed of the river is that portion of the soil *which is alternately covered and left bare, as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean stage during the entire year, without reference to the extraordinary freshets of the winter or spring, or the extreme droughts of the summer or autumn.*

"The western line of the cession on the Chattahoochee river must be traced on the water line of the acclivity of the western bank, and along that bank where that is defined; and in such places on the river where the western bank is not defined, it must be continued up the river on

the line of its bed, as that is made by the average and mean stage of the water, as that is expressed in the conclusion of the preceding paragraph of this opinion.''

The same question between private individuals concerning the same boundary line was determined by the same court in *Howard et al.* v. *Ingersoll*, reported in 13 How. 381, 14 L. Ed. 189. The decisions, while differing in phraseology, are practically the same in effect. The following excerpt from the separate decision of Mr. Justice Curtis, at page 427 of 13 How., 14 L. Ed. 189, of the case last cited, is a lucid statement of what the bank of a stream is when used to designate a boundary line:

''My opinion is: * * * That the banks of a river are those elevations of land which confine the waters when they rise out of the bed; and the bed is that soil so usually covered by water as to be distinguishable from the banks, by the character of the soil, or vegetation, or both, produced by the common presence and action of flowing water. But neither the line of ordinary high-water mark, nor of ordinary low-water mark, nor of a middle stage of water, can be assumed as the line dividing the bed from the banks. This line is to be found by examining the bed and the banks, and ascertaining where the presence and action of water are so common and usual, and so long continued in all ordinary years, as to mark upon the soil of the bed a character distinct from that of the banks, in respect to vegetation, as well as in respect to the nature of the soil itself. Whether this line between the bed and the banks will be found above or below, or at a middle stage of water, must depend upon the character of the stream. The height of a stream, during much of the larger part of the year, may be above or below a middle point between its highest and lowest flow. Something must depend also upon the rapidity of the stream and other circumstances. But in all cases the bed of a river is a natural object, and is to be sought for, not merely by the application of any abstract rules, but as other natural objects are sought for, and found, by the distinctive appearances they present; the banks being fast land, on which vegetation, appropriate to such land in the particular locality, grows wherever the bank is not too steep to permit such growth, and the bed being soil of a different character and having no vegetation, or only such as exists when commonly submerged in water.''

Many authorities can be found varying more or less from the doctrine of these two cases; but such as do, in our opinion, are either distinguishable in some material respects or are not

well considered. We believe the cases cited are correct in principle, and that the doctrine therein enunciated rests upon a firm and reasonable foundation. For further references generally see 1 Words and Phrases, pp. 687 to 689, inclusive; C. J. 1178, 1179.

The vice of the instruction given by the court in this case consists in not excluding the high-water line that might be made by floods and freshets which ordinarily occur, for a short time at least, even in an average year. As before stated, there is no evidence in the record of any mark on the banks of the creek constituting a boundary line within the definition given by the court, and whether the defendant's land upon which he claims the plaintiff committed a trespass was inside or outside of such boundary is unascertainable. If outside plaintiff of course could not have committed the offense. If inside he may have committed it and been subject to arrest by the defendant.

Judgment reversed. Cause remanded to the district court of Salt Lake County, with directions to grant a new trial. Appellant to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.