SMITH *v.* O'DONNELL.

1. CONTRACT. *Partly in writing and partly in parol.* A contract partly in writing and partly in parol is an oral contract, and this will be the case where the written contract is imperfect or incomplete for the want of a signature, or because it contains no obligation on the part of one of the contracting parties.

2. SAME. *Same.* Where, therefore, a contractor and a sub-contractor, for the grading of certain sections of a railroad, undertook to reduce the contracts between them to writing, using the printed forms of the railroad company, and the draftsman filled up the forms so unskillfully, that the one contract expressly purported to be between the contractor and sub-contractor of the one part, and the railroad company of the other part, and both contracts stipulated that the payment of the price of the work to be done by the sub-contractor should be made by the company, the railroad company being no party to the transactions, and contained no obligation on the part of the contractor to the sub-contractor, it was held, in an action at law by the sub-contractor against the contractor on the contracts as oral, that the writings were incomplete, but might be looked to, in connection with the parol testimony, to ascertain what the contracts were.

3. SAME. *Action for breach of. Measure of damages.* In an action upon a contract for the grading of a railroad, to recover damages for a breach of the contract by the defendants in preventing the plaintiff from completing the work, the difference between the probable cost of doing the work and the contract price is a proper measure of damages.

4. SAME. *Same. Same. Evidence.* In such an action, it is competent to prove by the plaintiff the amount of the work remaining to be done, and the fact that after stating that the quantity its probable cost; and the fact that after stating that the quantity might be so much, he confesses that he does not know and cannot pretend to state the quantity, will not make the evidence incompetent, although it may render it of little value.

5. SAME. *Same. Same.* But the loss which the plaintiff may have sustained by the foreclosure of a trust assignment on the stock used by him in performing the work, or by the levy upon his tools, after he has been compelled to stop the work, is not an element in ascertain-

ing the damages occasioned by such stoppage, and it was error to permit the plaintiff, over the objection of the defendant, to make such proof.

FROM DAVIDSON.

Appeal in error from the Law Court of Davidson county. J. C. GUILD, J.

J. C. & J. M. GAUT for Smith.

J. P. HELMS and SMITH & ALLISON and ED. BAXTER for O'Donnell.

COOPER, J., delivered the opinion of the court.

W. & T. C. Smith were contractors, by contract with the Memphis & Charleston Railroad Company, to complete the grading, masonry, etc., of a number of sections on the Sparta branch of that company's road. Connell O'Donnell became a sub-contractor, by contract with the Smiths, to do all the grading on section 15 of that branch road. Before completion of the work, he was ordered by the company and by the Smiths to quit work on that section, and go to section 8. He thereupon entered into a new contract with the Smiths to grade that section. At the same time it was agreed between him and the Smiths, in a certain contingency, that he should also do the work on section 9, and he did afterwards go to work on that section. Before the completion of the grading of those two sections, the Railroad Company, under a power reserved in its contract with the Smiths, stopped the work altogether, and the Smiths directed O'Donnell to quit also. This

suit was brought by O'Donnell against the Smiths to recover for the work done, and damages for the breach of the contracts by the Smiths in preventing him from completing the work. The verdict and judgment were in favor of O'Donnell, and the Smiths appealed in error.

The parties undertook to reduce their original contract to writing, using for this purpose one of the printed forms of the Memphis & Charleston Railroad Company, for contracts between it and its contractors. The written instrument, signed by the plaintiff and defendants to this suit, was dated January 10, 1872, and related to section 15. The contract in relation to section 8 was also reduced to writing in the same way, on May 1, 1872. At the time, this last contract was entered into, it was verbally agreed between the parties, that O'Donnell should, in a contingency which happened, do the work on section 9 on the same terms, and a written memorandum to this effect was afterwards endorsed on the instrument of May 1, 1872, by the local engineer of the railroad company.

The plaintiff in the court below filed at first ten counts in his declaration based upon the written contracts. The defendant demurred to the declaration, assigning as causes of demurrer, that the supposed contracts of January 10, and May 1, 1872, show on their face that the Memphis & Charleston Railroad Company were to control and pay for the work to be done by the plaintiff, and that the defendant did not covenant or promise to pay therefor; and that the contract of May 1, 1872, purports on its face to be a

contract between the plaintiff and defendants on the one part, and the Memphis & Charleston Railroad Company on the other part, and was never completed by being signed by the company.

The contract of May 1, 1872, when produced upon oyer of the defendants, does recite the agreement as made by "Connell O'Donnell and W. & T. C. Smith, of the first part, and the Memphis & Charleston Railroad Company, of the second part," and provides that the work shall be done under the direction of the engineer of the company, and paid by the company. The contract of January 10, 1872, purports to be between O'Donnell of the first part, and W. & T. C. Smith of the second part, and recites that the party of the first part agrees to do the work of graduation "in consideration of the payments and covenants hereinafter mentioned to be made and performed by said railroad company." It further recites: "And the said Memphis &. Charleston Railroad Company agrees to pay the first party for completing this contract according to its terms, the prices affixed," etc. It also provides for the payment, about the first of each month, of four fifths of the estimates of the company's engineers, to to be paid by the treasurer of the company in certain specified funds, and for the payment of the other fifth when the work is completed. It contains no obligation on the part of W. & T. C. Smith, either directly to the plaintiffs, or for the performance of the covenants of the railroad company by the company.

The circuit judge was of opinion that these written instruments were merely memoranda of contem-

plated contracts, which were never completed by their execution by the railroad company, and he therefore sustained the demurrer.

The plaintiff, then, by leave of the court, filed three new counts, one proceeding upon a *quantum meruit*, another containing the common counts, and the third being a special count setting out the contracts between the parties as parol contracts. The defendants pleaded to these counts, among other pleas, the general issue and payment, and a special plea that the only contracts the defendants ever made and signed with the plaintiff, were printed forms of contract with the Memphis & Charleston Railroad Company, the blanks being filled, signed by plaintiff and defendants, but not by the railroad company, and dated respectively January 10, and May 1, 1872, profert of which was made by the original declaration; and that all the work to be done by the plaintiffs was to be done for, and paid by the railroad company, and not by the defendants. The parties joined issue on these pleas, and the defendants procured an order of the court that the plaintiff file the contracts made profert of in the original declaration, and the plaintiff produced and filed them accordingly.

On the trial of the case, the plaintiff and both defendants, who were all examined as witnesses, proved that the contracts, under which the plaintiff worked, were made exclusively between them, and that the Memphis & Charleston Railroad Company was no party thereto. These witnesses all agree that they did undertake to reduce the contracts to writing, the drafts-

man, one of the local engineers of the railroad company, using for this purpose the usual printed forms of the company. They further agree that these instruments correctly represented the work to be done, the prices to be paid, and the terms of payment, namely, four-fifths of the monthly estimates as the work progressed, and the other fifth on a final estimate. The Smiths prove, moreover, that they received the money due on the estimates from the railroad company, under their contract with the company, and paid the plaintiff for his work under their contracts with him. The plaintiff read as evidence the two written instruments of January 10, and May 1, 1872, and proved that he and defendants made their contracts at first in parol, and afterwards undertook to put them in writing in said instruments; that these were the only contracts ever made between them, and that the railroad company was not a party to the contracts between him and defendants.

The first error relied on by the plaintiff in error for reversal is that, upon the trial, the plaintiff read to the jury the written contracts, and then proved that they did not embody the real contracts, and sought a recovery upon them as changed by parol testimony. In other words, it is argued that the plaintiff was permitted to change written contracts by oral evidence. If the trial had been on the declaration as first filed, the ten counts of which were based on the written contracts, the error assigned would have been fatal. For, it is well settled that parol testimony is inadmissible at law to change the terms of a written contract

sued on, or to alter its legal effect. But the demurrer of the defendants to these counts was sustained, and the trial was had upon the three counts of the amended declaration, all of which proceeded upon the ground that the contracts sued on were in parol. A contract may be partly in writing and partly in parol, in which case it is an oral contract: Bishop on Con., sec. 58, 647; *Turley* v. *Cooley*, 2 Memph. L. J., 229. This will be the case where the writing is imperfect or incomplete, or where a complete contract is afterwards changed orally. In such cases, the writing and the parol testimony are competent to show the entire contract. The question before the court and jury, in the present instance, was, therefore, whether the written instruments constituted complete contracts, which were never orally changed. But the defendants themselves, treated the writings as incomplete, for want of the signature of the railroad company, and as not creating any obligation on their part, and filed a successful demurrer to the original declaration on these grounds. Obviously, if the signature of the railroad company was required, or if, for any other reason, these writings created no obligation on the part of the defendants, the instrument would be incomplete as contracts, and parol testimony was admissible to show what the contracts really were. After the instruments, upon their application, had been adjudged to be incomplete and not obligatory on them, and the judgment remained in full force and acquiesced in by their adversary, the defendants would, perhaps, be estopped to aver the contrary. But the construction of the court was undoubtedly

correct.    By a blunder of the draftsman, the writings
failed to embody the contracts of the parties, and, in
fact, failed to make a contract at all between them.
They could, consequently, only be looked to as mem-
oranda, from which, in connection with the parol proof,
to ascertain what were the real contracts.

The next error assigned is, that a party plaintiff
cannot, at law, disregard the written contract, and re-
cover upon a parol agreement.    But, as we have seen,
there is here no written contract, and the assign-
ment fails.

The last error relied on is, that the proof showed
that the plaintiff had been fully paid by the defendants.
for his work actually done, and that the verdict of
the jury was given for the damages occasioned by the
defendants stopping the work, and that these damages,
in view of the testimony, were merely speculative.    The
plaintiff was permitted, over the objection of the de-
fendants, to testify as to the amount of the work to be
done, and the profit he would have made.    The plain-
tiff was asked, and the bill of exceptions says, pressed
to make an estimate of the work remaining to be done
on one or more of the sections included in his con-
tract; and, over the objection of defendants, was asked
if there might not have been eight or ten or twenty
thousand cubic yards.    His reply was, he thought
there might be eight or ten thousand cubic yards,.
immediately adding: "But I don't know.   I don't pre-
tend to say how many yards there were."    He was
then asked, the defendants objecting, how much, in his
opinion, it would have cost him with his facilities,.

when the work was stopped, to remove the remainder of the earth to complete the grade. He answered: "I think I could have removed it at fifteen cents per cubic yard." The defendants were to pay plaintiff twenty cents per cubic yard. Plaintiff further testified that the work on section 9 was only one-third done when the defendants stopped it, and that it was the best paying section on the road.

The testimony was conflicting whether the defendants had paid to the plaintiff, or upon his order, the twenty per cent. reserved. It is uncertain, therefore, whether the verdict was not rendered, wholly or partially, as damages for the breach of the contracts, by the defendants in preventing the plaintiff from completing the work. There can be no doubt that the plaintiff had been at some expense, both of time and money, in preparing his sections so as to render the remaining work easier. It is certain, also, that he sustained damage by the stoppage of the work. The defendants, themselves, say that they were damaged by the stoppage of the work by the railroad company, by reason of their outfit with a view to the carrying on of the work, and the same was no doubt true as to the plaintiff. It was competent to prove by the plaintiff, or any other witness, the amount of work remaining to be done, and its probable cost, if these facts constituted elements in fixing the damages. It was not improper, therefore, in this view, to try to ascertain whether the plaintiff could definitely fix the quantity of unfinished work. His answer was not of much value, but might go for what it was worth. Unless there was

some error in the charge of the court to the jury upon the measure of damages, the rulings of the court upon the above questions and answers would not vitiate the verdict.

Upon this point the court said: " If you find that the plaintiff was prepared to do the work, and was going on with it under his contract, and was ordered off from time to time from the section, and ultimately dismissed from prosecuting his work without fault on his part, and the defendants were not authorized under the contracts to prevent or dismiss him from prosecuting the work, then the plaintiff would have a right to recover such damages as directly and naturally arose out of such wrongful act.  Actual damages clearly include the direct damages, or loss, which the plaintiff sustained. There is a class of profits which cannot be recovered. They are profits contingent upon future bargains, or speculations on different states of the market, and not the difference between the agreed price of something contracted for, and its ascertained value or cost.  For instance, if the plaintiff engaged in the work could place the cubic yard of earth at fifteen cents, and the agreed price was twenty cents, he was damaged five cents the cubic yard, and so on with the solid rock or loose rock, if the proof shows the difference.  In other words, the loss would, among other things, be the difference between the cost of doing the work, and the price agreed to be paid for it, and any other direct damages he sustained by a breach of the contract."

There is clearly no error in this charge, so far as

it declares that the plaintiff was entitled to recover, as damages for the breach of the contract by the defendants in not permitting him to complete the work, the difference between the cost to him of doing the work, and the price to be paid for it. This difference was the inducement to enter into the contract on the part of the plaintiffs, and to deprive him of it, when the other party has broken the contract, would be unjust. The profit of which a contractor is deprived by the refusal of his employer to allow him to proceed with, and complete the work, is a proper measure of damages: *Oliver* v. *Morgan,* 10 Heisk., 322; *The Philadelphia & C. R. R. Co.,* v. *Howard,* 13 How., 320. "Wherever," says Mr. Justice Curtis, in the last of these cases, "profits are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, or speculations, or states of the market are referred to, and not the difference between the agreed price of something contracted for and its ascertainable value or cost." And see *Pettee* v. *Tennessee Manf. Co.,* 1 Sneed, 381.

But the plaintiff was permitted, over the objection of the defendants, to testify that during the progress of the work he got in debt, and gave a deed of trust on his stock, consisting of 14 horses and mules and 13 carts, to one of his creditors; that when the work stopped, the creditor foreclosed the trust, and sold the stock at a great sacrifice, the stock not bringing half their value; that this was a heavy loss to him; that another creditor levied on his tools when he was leaving, and sold them for his debt, although plaintiff had

Smith *v.* O'Donnell.

given him an order on the defendants for his claim. It is very clear that the loss of the plaintiff by reason of these acts of his creditors, if the demands were just, was *damnum absque injuria.* It was his misfortune that he was not prepared to meet his liabilities to prevent a sacrifice of his property. The loss was not the proximate consequences of the defendants' breach of their contracts, nor such as could have been within the contemplation of the parties when the contract was made. The contract itself must give the measure of damages: *State* v. *Ward,* 9 Heisk., 132. His Honor charged the jury that they might allow as damages for the breach the probable profits of the contracts, as above explained, "and any other direct damages he sustained by the breach." And by allowing the testimony in question to go before the jury, he must have intended that the jury should look to it in ascertaining the direct damages. In this, he was in error.

Reverse and remand.