John Deere Plow Co. v. Shellabarger.

JOHN DEERE PLOW CO. *v.* M. SHELLABARGER.

*(Jackson.* April Term, 1918.)

1. **SALES. Breach of contract. Waiver.**

Where installments of lumber shipped under an installment contract were accepted and paid for by buyer, who was aware of any defects, breach of contract as to such installments was waived, and precluded buyer from using such breach as a discharge from the contract as to future installments. (*Post, p.* 128.)

2. **SALES. Entire and severable contracts.**

An agreement to purchase during the contract period fifty cars of lumber, deliveries to be made upon specifications and orders of the buyer in different periods throughout the year, was entire, and not severable. (*Post, p.* 128.)

Cases cited and approved: Foundry Co. v. Wheel Co., 113 Tenn., 370; Cement Co. v. Oliver, 125 Tenn., 135; Guernsey v. West Coast Lumber Co., 87 Cal., 249; Scott v. Kittanning Coal Co., 89 Pa., 231; J. W. Ellison, Son & Co. v. Flat Top Grocery Co., 69 W. Va., 380.

Case cited and distinguished: Cahen v. Platt, 69 N. Y., 348.

3. **SALES. Installment contracts. Breach.**

Where deliveries of lumber were to be made upon orders and specifications of buyer, and buyer, by accepting installments delivered, waived any defects with reference thereto, failure of buyer to give further orders or specifications amounted to a breach; it not being necessary for seller to tender lumber. (*Post, pp.* 128-131.)

Cases cited and approved: Ault v. Dustin, 100 Tenn., 367; Gardner v. Deeds '& Hirsig, 116 Tenn., 128.

4. **SALES.** Goods to be manufactured. Breach of contract. Damages.

The measure of damages for buyer's breach of contract to order lumber to be manufactured was the profits which the seller would have realized had he been permitted to complete the contract; the materials for completing the contract, though not all on hand, being available. (*Post, pp.* 131-133.)

Cases cited and approved: Cement Co. v. Oliver, 125 Tenn., 135; Hardwick v. Can Co., 113 Tenn., 657.

---

FROM MADISON.

---

Appeal from the Chancery Court of Madison County.—Hon. J. W. Ross, Chancellor.

W. G. Timberlake, for Shellabarger.

W. H. Biggs and Casey & Sherrod, for John Deere Plow Co.

Mr. Justice Green delivered the opinion of the Court.

The bill in this case was filed by the John Deere Plow Company to recover on an account against the defendant, Shellabarger. Shellabarger answered, admitting that the account was substantially correct, but set up by cross-bill a claim against the Plow Company for damages for breach of a contract to purchase lumber.

Considerable proof was taken, and the chancellor found that Shellabarger was indebted to the Plow

Company at the time of the filing of the bill in the sum of $1,072.34. He further found that the Plow Company had breached the lumber contract and that Shellabarger was entitled to damages in the sum of $437.50. He rendered a decree in favor of the Plow Company for the difference.

Both parties have brought the case to this court. No question is here made on the amount of the Plow Company's account as found by the chancellor.

The Plow Company assigns error on the action of the chancellor in holding that it had breached the lumber contract. Shellabarger assigns error on the measure of damages adopted by the chancellor.

The John Deere Plow Company was a manufacturer of agricultural implements located in St. Louis. Shellabarger was a merchant at Bells, Tenn., and he also operated a sawmill and was engaged in other enterprises.

The account of the John Deere Plow Company represents goods purchased from it by Shellabarger for his store.

The Plow Company requires in its business considerable lumber for crating purposes to prepare for shipment agricultural implements which is sends all over the country. Shellabarger had sold this company several cars of lumber for this purpose, and on a visit that he made to St. Louis, in the fall of 1907, a contract for additional lumber was made between the Plow Company and Shellabarger as follows:

"Memorandum of Agreement, Oct. 1, 1907.

"Entered into this date by and between M. Shella-barger, of Bells, Tenn., known hereafter as the seller, and the John Deere Plow Company, of St. Louis, Mo., known hereafter as the buyer:

"The buyer agrees to purchase of the seller during the contract period fifty (50) cars of crating lumber, and the seller agrees to furnish said material at the price and terms hereinafter named.

"Price: $12 per thousand feet f. o. b. Bells, Tenn.

"Terms: Thirty days or two per cent. cash discount if paid in ten days after date of invoice and bill of lading.

"The lumber shall consist of gum and elm, equal in grade to that already shipped the buyer and cut to buyer's dimensions. Inspection guaranteed.

"The seller agrees to ship during any month in the contract period at least one car every four days if called upon to do so by the buyer: Provided, however, specifications are placed with the seller by the buyer at least thirty days in advance of shipping date.

"All different lengths to be kept separate and each length tied in bundles.

"The JOHN DEERE PLOW COMPANY

"By P. E. EBRENZ, Supt. Carriage Factory.

"Accepted: M. SHELLABARGER."

It is agreed between the parties that this contract was intended to be performed within twelve months.

The company ordered, and Shellabarger shipped, seven cars of lumber under the contract; the first

one in the fall of 1907, and the last one in May, 1908.

There was some correspondence between the parties with reference to the cars shipped. The Plow Company contended that the lumber was not cut according to specifications, and complained of the way it was bundled and loaded in the cars, and made some complaint about its quality. In April, 1908, complaining of a car just received, the Plow Company wrote Shellabarger that it would not order any more lumber from him. During May, however, it received another car from him, and found some fault with this, and wrote him that it did not think it would order any more lumber from him. The last letter of the Plow Company, however, left its future course in doubt, and was not distinct and unequivocal in its terms, and could not, in itself, be regarded as a renunciation of the contract. Page on Contracts, section 1439; 13 C. J., 654.

Shellabarger insists that the complaints with reference to the lumber were not justified. There is a conflict in the proof.

Whatever may have been the defects in the lumber contained in the several shipments made, no shipment was rejected. On the contrary, every one of these shipments was accepted by the Plow Company, and every one of them paid for by it.

No further orders for lumber were made by the Plow Company after May, 1908. Shellabarger wrote to the company during the summer, and advised that he was ready and willing to complete his contract.

The Plow Company insists that it was entitled to abandon this contract, and was released from further liability thereunder, by reason of the defective quality of the lumber contained in the several shipments made by Shellabarger.

This contention cannot be sustained.

The Plow Company inspected the lumber shipped under contract by Shellabarger, and had full opportunity to observe its condition, and, in fact, knew the exact quality of the said shipments. If the defects claimed existed, the Plow Company was perfectly aware of them. Notwithstanding this knowledge, the company kept all the lumber shipped to it, which it might have returned, or refused to accept, and paid for it. Under these circumstances, if there was a breach of the contract by Shellabarger as to the quality of the goods delivered, this breach was waived.

"If the promisee, with knowledge of the breach, voluntarily retains property delivered to him in performance of the contract, which property it is possible for him to return to the promisor, such retention will amount to a waiver of the breach so as to preclude him from using such breach as a discharge." Page on Contracts, section 1500.

The contract under consideration, under our authorities, was doubtless entire, and not severable. *Foundry Co. v. Wheel Co.*, 113 Tenn., 370, 83 S. W., 167, 68 L. R. A., 829, 3 Ann. Cas., 898; *Cement Co. v. Oliver*, 125 Tenn., 135, 140 S. W., 595, 38 L. R. A. (N. S.), 416, Ann. Cas., 1913C, 120.

This question, however, is not of special importance. It was an installment contract. Deliveries were to be made upon specifications and orders of the buyer at different periods throughout the year.

Under such a contract, a buyer, who accepts a particular delivery, is not entitled to abandon the contract and forbid future deliveries because of defects in the first delivery. A buyer might refuse a delivery defective in quality, and claim a breach of the contract, under our authorities, of the entire contract. When he accepts a delivery, however, he waives his claim for a breach on account of defects in that particular delivery. He cannot assume that subsequent deliveries will be defective. This is especially true when he makes complaint as to the quality of past deliveries and the seller promises to remedy them. If subsequent deliveries are defective, the buyer may refuse them, and declare the contract breached. He cannot assume, however, that subsequent deliveries will be defective, and reject them in advance. Having waived the former breach, he cannot rest a claim of breach upon an anticipated wrong.

Mr. Page says:

"If the vendor delivers the amount agreed upon for each installment as it comes due, the fact that the goods delivered in certain installments are not up to the standard fixed by the contract is not such a breach of the entire contract as excuses the vendee from taking and paying for the remaining installments." Page on Contracts, section 1492.

140 Tenn.—9.

Mr. Mechem says:

"The fact that the first installments which have been accepted did not comply with the contract will not justify the buyer in refusing to accept subsequent installments which do conform to it." Mechem on Sales, section 1399.

"Where, however, goods sold are delivered in installments, the acceptance of an installment which does not comply with the requirements of the contract is not a waiver of the seller's right to reject subsequent installments, which also fail to comply with such requirement; but he is not entitled, after such acceptance, to refuse to accept the residue of the goods unless they also fail to comply with the contract, especially where the seller promises to remedy the defects in the goods accepted and that the balance shall conform to the contract." 35 Cyc., 222.

The leading case on this subject is *Cahen* v. *Platt*, 69 N. Y., 348, 25 Am. Rep., 203, where there was a contract for the delivery of glass in installments. The first which had been received did not correspond with the contract and the buyers thereupon refused to receive any more under the contract. The court said:

"The fact that the glass delivered and received upon the contract was inferior did not give them the right to repudiate the contract altogether. They could demand better glass, and when the plaintiff offered to deliver the balance, if it was inferior, they could refuse to accept it. But, if plaintiff was ready and

willing to deliver for the balance such glass as the contract called for, they were bound to receive it." *Cahen* v. *Platt,* supra.

To like effect, see *Guernsey* v. *West Coast Lumber Co.,* 87 Cal., 249, 25 Pac., 414; *Scott* v. *Kittanning Coal Co.,* 89 Pa., 231, 33 Am. Rep., 753; *J. W. Ellison Son & Co.* v. *Flat Top Grocery Co.,* 69 W. Va., 380, 71 S. E., 39, 38 L. R. A. (N. S.), 539. And see cases collected in note, 38 L. R. A. (N. S.), 542. Such appears to be the weight of authority.

As heretofore seen, deliveries of lumber were to be made upon orders and specifications of the Plow Company. They gave no order or specifications after May, 1908. This failure amounted to a breach of the contract under consideration. It was not necessary for Shellabarger to tender the goods. *Ault* v. *Dustin,* 100 Tenn., 367, 45 S. W., 981; *Gardner* v. *Deeds & Hirsig,* 116 Tenn., 128, 92 S. W., 518, 4 L. R. A. (N. S.), 740, 7 Ann. Cas., 1172; 35 Cyc., 171.

So, having concluded that there was a breach of this contract by The John Deere Plow Company, it follows that Shellabarger is entitled to recover damages for this breach.

It seems that Shellabarger had on hand between 75,000 and 100,000 feet of logs at the time of the breach of the contract. The panic of 1907 and the consequent decline in the price of lumber came on between the execution and breach of said contract. The chancellor allowed Shellabarger as damages the difference between the market price and the

contract price of such an amount of lumber as he could
have sawed out of the logs on hand. Shellabarger
had on hand not nearly enough logs to complete his
contract, but he claims that they were in sight and
easily procurable by him.

We think the measure of damages adopted by the
chancellor was erroneous. This question is conclud-
ed by *Gardner* v. *Deeds & Hirsig,* supra, in which
case the buyer breached his contract, whereby he was
to take from a manufacturer five hundred buggies of
specified descriptions at stipulated prices. The bug-
gies were not *in esse, but* were to be manufactured,
and to be ordered as needed by the purchaser.

Under these circumstances this court held that the
manufacturer was entitled to recover the profits he
would have made if he had been permitted to complete
his contract; that is, the contract price of the goods,
less the cost of manufacture.

The authorities are reviewed, and the rule for the
admeasurement of damages in cases like this is so
fully set out, in the opinion just referred to, that
further discussion is not necessary here.

In *Gardner* v. *Deeds & Hirsig,* supra, the manu-
facturer had assembled his materials at the time of
the breach. In some of the cases cited, however, and
in the annotations to *Gardner* v. *Deeds & Hirsig,* as
that case is reported in 4 L. R. A. (N. S.), 740, the
same rule is applied to cases where the manufacturer
has to purchase part of the materials necessary to
complete the contract.

We presume it should appear, of course, that the materials for completing the contract were available to the manufacturer. Otherwise, he could not show a loss of profit.

As pointed out in *Gardner* v. *Deeds & Hirsig,* supra, the measure of damages in cases like that one and this is the profit which the manufacturer would have made. The damage is not to be measured by the difference in the market value and the contract price. Where the goods are not *in esse,* the market value is immaterial, for the market may change before the goods could be manufactured.

*Cement Co.* v. *Oliver,* 125 Tenn., 135, 140 S. W., 595, 38 L. R. A. (N. S.), 416, Ann. Cas., 1913C, 120, *Hardwick* v. *Can Co.,* 113 Tenn., 657, 88 S. W., 797, and cases like that, are not in point, because in those cases the goods to be delivered had already been manufactured and were *in esse,* and the measure of damages was properly held to be the difference between the contract price and the market price.

It follows that the chancellor's decree must be modified on the measure of damages allowed to Shellabarger; otherwise, affirmed. The case will be remanded for another accounting, upon the principles laid down in *Gardner* v. *Deeds & Hirsig,* supra. The costs of this court will be paid by the John Deere Plow Company, and the costs of the lower court will be adjudged by the chancellor.